UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL HAMEL, TODD NEUMANN,<br>WILLIAM FREEMAN, JAMES<br>O'CONNELL, AND JAMES CHOQUETTE,<br><br>*Plaintiffs*,<br><br>v.<br><br>WESTERN MASSACHUSETTS ELECTRIC<br>COMPANY (d/b/a EVERSOURCE ENERGY),<br><br>*Defendant*. | CIVIL ACTION NO. |

## <u>DEFENDANT'S NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1331, 1441(a), 1446, and 1453, Defendant NSTAR Electric Company[1] ("NSTAR") by and through its undersigned counsel, respectfully files this Notice of Removal from the Superior Court of the Commonwealth of Massachusetts, Hampden County, to the United States District Court for the District of Massachusetts, Western Division.  In support thereof, NSTAR states as follows:

### <u>Background</u>

1.     On or about January 4, 2021, Plaintiffs Daniel Hamel, Todd Neuman, William Freeman, James O'Connell, and James Choquette ("Plaintiffs") filed a Complaint and Jury Demand dated December 29, 2020 (the "Complaint") against NSTAR in the Superior Court of the

---

[1] Plaintiffs have misidentified the defendant in their Complaint, which is styled as *Hamel, et al., v. Western Massachusetts Electric Company.* Western Massachusetts Electric Company merged with NSTAR Electric Company effective 11:59 p.m. on December 31, 2017. The surviving corporation, and successor in interest to Western Massachusetts Electric Company for purposes of this litigation and the associated collective bargaining agreement between Western Massachusetts Electric Company and the Plaintiffs' union, dated from October 1, 2016 until October 1, 2020, is NSTAR Electric Company, a Massachusetts corporation with a usual place of business located at 800 Boylston Street, 17th Floor, Boston, MA 02199.

Commonwealth of Massachusetts, Hampden County.  The case is captioned *Hamel et al v. Western Massachusetts Electric Company d/b/a Eversource Energy*, Docket No. 2179CV000001 ("the State Court Action").  *See* Exhibit A, Complaint.

2.      As set forth below, this removal is timely under 28 U.S.C. § 1446(b)(3) because it is being filed within 30 days of NSTAR's receipt of a deposition transcript from which NSTAR was first able to ascertain that the case presents a federal question, such that it can sustain federal question jurisdiction.  *See* 28 U.S.C. § 1446(b)(3); *Romulus v. CVS Pharmacy*, 770 F.3d 67, 77-78 (2014) (deposition transcripts are 'other papers' for removal purposes); *Santiago v. Horgan Enters., Inc.*, C.A. No. 19-cv-10125-ADB, 2019 WL 917126 (D. Mass. Feb. 25, 2019) (same).

3.      Specifically and as set forth herein, Plaintiffs' wage and overtime claims are based on a collective bargaining agreement ("CBA"), and are therefore preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 141, *et seq.*, ("LMRA").

4.      Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of all process, pleadings, and orders served upon NSTAR in the State Court Action are attached hereto as Exhibit B.

## Venue

5.      Pursuant to 28 U.S.C. § 1441(a), venue is proper in this Court because the State Court Action was filed within this District.

6.      No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## Grounds for Removal

7.      As set forth below, removal is proper because this Court has original jurisdiction over the putative class action and Plaintiffs' individual claims under 28 U.S.C. § 1331 and the LMRA.

**A. This Notice of Removal is Timely Filed.**

8.      In general, removal of a civil action must be filed within 30 days after a defendant's receipt of an initial pleading. *See* 28 U.S.C. § 1446(b)(1). However, where a "case stated by the initial pleading is not removable," a defendant must remove "within 30 days after receipt . . . of a copy of a[n] . . . other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

9.      Plaintiffs' Complaint is artfully pled to create the impression that its causes of action, claims for unpaid wages and overtime, arise solely under the Massachusetts Wage Act ("MWA") and not under the CBA. *See generally* <u>Exhibit A</u>. Plaintiffs also specifically disclaimed in their interrogatory responses that they would be seeking damages or making any claims under their CBA. *See, e.g.,* <u>Exhibit C,</u> excerpt of Defendant Hamel's Interrogatory Responses, at Interrogatory Response No. 11 ("We are not making a claim under the Collective Bargaining Agreement between Local 455 and Defendant.").

10.     For these reasons, Plaintiffs' attempts to avoid application of the LMRA in the pleadings and the initial written discovery taken in this case prevented NSTAR from removing the action prior to taking depositions. *Cf. Van Bebber v. Dignity Health*, No. 1:19-cv-00264-DAD-EPG, 2019 WL 4127204 (E.D. Cal. Aug. 30, 2019) (removal after one and a half years of litigation proper where, *inter alia*, plaintiff's "attempt to avoid application of the LMRA" led to "construct[ion of the] pleadings so as to avoid any reference to the CBAs"). It is well established that the "subjective knowledge of the defendants cannot convert a case into a removable action." *See, e.g., Lee v. Choudhri (In re Briar Bldg. Houston LLC)*, No. 18-32218, 2021 WL 136355 (Bankr. S.D. Tex. Jan. 14, 2021) (further providing that "[t]he defendants have no obligation to

engage in due diligence to determine if the case is removable."). Therefore, mere suspicion is insufficient to support removal.

11.     Here, NSTAR suspected (but did not know) that this case was removable when it received the Plaintiffs' Complaint. As a result, NSTAR included the affirmative defense of LMRA preemption in its Answer to the Plaintiffs' Complaint. Notwithstanding that inclusion in its initial responsive pleading, NSTAR could not *objectively* determine that the case was removable prior to engaging in deposition practice.

12.     In accordance with the above legal standards and precedent, NSTAR first obtained documented support for the fact that Plaintiffs' claims were based upon the CBA during their depositions. As set forth below, Plaintiff Daniel Hamel ("Hamel") and Brian Kenney ("Kenney") – the former Business Manager for the International Brotherhood of Electrical Workers, Local Chapter 455 (the "Union") and the chief strategist behind the Complaint – testified during their depositions to evidence sufficient to establish that their (a) claims cannot be evaluated and (b) damages cannot be calculated without interpreting the CBA. As a result of the testimony, NSTAR verified that the Plaintiffs' claims present a federal question under principles of LMRA preemption.

13.     In an abundance of caution, this Notice is being filed within 30 days following NSTAR's receipt of *the first deposition transcript* described above, as Kenney's deposition transcript was received on June 21, 2022. *See* Exhibit D, excerpts of Deposition Transcript of Brian Kenney (Kenney Depo. Trans.).  Deposition transcripts are "other papers" from which it may be ascertained that a case has become removable. *Romulus v. CVS Pharmacy*, 770 F.3d 67, 77-78 (2014) (listing deposition transcripts as 'other papers' for removal purposes); *Santiago v. Horgan Enters., Inc.*, C.A. No. 19-cv-10125-ADB, 2019 WL 917126 (D. Mass. Feb. 25, 2019) (same).

14.     Because NSTAR had thirty days (at the earliest) from receipt of Kenney's transcript in order to file for removal in accordance with 28 U.S.C. § 1446(b)(3), NSTAR's filing date of July 21, 2022 is timely.  Moreover, Hamel's deposition took place a week after Kenney's, on June 22, and it was truly upon hearing from a Plaintiff that NSTAR was put on notice that this case was removable.  This removal is timely based on either date.

**B.  This Court Has Federal Question Jurisdiction.**

15.     This Court has federal question jurisdiction over the Plaintiffs' claims because their state law claims are completely preempted by the LMRA.

16.     Pursuant to § 301 of the LMRA, federal jurisdiction lies where an action is brought "for violation of contracts between an employer and a labor organization representing employee[s]." 29 U.S.C. § 185(a).

17.     As the First Circuit has held, "any claim for compensation above the state minima" or otherwise reliant upon CBA interpretation are preempted by the LMRA. *See Cavallaro* v. *UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 7 (1st Cir. 2012); *see also Adames v. Executive Airlines, Inc.*, 258 F.3d 7 (1st Cir. 2001) (finding LMRA preemption where CBA interpretation was required to calculate, *inter alia*, meal break damages).

18.     On June 15, 2022, Kenney was deposed in connection with this matter. *See* <u>Exhibit D</u> (Kenney Depo. Trans.). Kenney served as the Union Business Manager until his retirement on January 4, 2022, but he still maintains an interest in this Action. *See id.* at 20:18-21:2; 24:11-13.

19.     On June 22, 2022, Hamel was deposed in connection with this matter. *See* <u>Exhibit E</u>, excerpts of Deposition Transcript of Daniel Hamel (Hamel Depo. Trans.). Apart from being one of the named plaintiffs in this matter, Hamel currently serves as Union President, and has formerly served as a Recording Secretary and Assistant Business Manager. *See id.* at 10:22; 26:1; 47:12-22.

20.    The MWA only permits plaintiffs to recover overtime payments for hours worked above forty in one week. *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 259 (D. Mass. 2011).  It also allows employers to credit premium hours against any claimed damages. *See id.* (stating with respect to the interaction of a collective bargaining agreement and the FLSA that the "premium portion of the contractual overtime rate [the extra one-half on top of the regular rate] may be used to offset the defendant's statutory overtime liability."); *see also Swift v. Autozone, Inc.,* 441 Mass. 443 (Mass. 2004) (holding that the Wage Act permits crediting premium hours).  Because Plaintiffs are seeking premium, CBA-based wage payments for every unpaid meal break without regard to (a) other premium payments during the week and (b) how many hours they actually worked during that week, Plaintiffs are seeking damages in excess of the state minima. Because they exceed the state minima, the Plaintiffs' claims are reliant on the CBA and therefore preempted by the LMRA*.  See Cavallaro* v. *UMass Mem'l Healthcare, Inc*., 678 F.3d 1, 7 (1st Cir. 2012) ("any claim for compensation above the state minima must be entirely dependent on the CBA").

21.    By way of example, during his deposition, Kenney testified that the applicable wage rate for damages calculations this in lawsuit would be based upon the CBA and would vary based on the person and the time period. *See* Exhibit D (Kenney Depo. Trans.) at 171:2-22. Though he testified in a conclusory manner at the close of his deposition in response to the Plaintiffs' attorney's cross-examination that the Plaintiffs were not making any claims under the CBA and could not support any such claims (*id.* at 175:1-176:8), his earlier testimony and actions, including filing both a grievance and an unfair labor practice concerning the same subject matter as the Complaint and telling the National Labor Relations Board in a sworn affidavit that both were legally supportable, bely these strategic claims. *Id.* at 71:14-73:11; *see also* Exhibit F Unfair

Labor Practice Charge ("ULP Charge") filed February 5, 2018 (Kenny Depo. Exh. 5); Exhibit G Meal Break Grievance ("Grievance") submitted February 16, 2018 (Kenny Depo. Exh. 8).

22.     Though Hamel similarly testified in response to his attorney's cross-examination that he was not making any claims in accordance with the CBA (*see* Exhibit E, (Hamel Depo. Trans.) at 141:4-8), he explicitly testified on direct-examination that the Plaintiffs are seeking overtime pay in accordance with the CBA's wage rates during his deposition. *Id.* at 135:9-22. He further testified that the CBA requires premium pay during lunch hours for weeks in which the Plaintiffs worked less than forty (40) total hours, and that these requirements should apply to this lawsuit. *Id.* at 119:4-22 (explaining the CBA premium pay requirements for hours outside of an employee's 'regular hours,' including meal breaks).

23.     Critically, Hamel testified that in this lawsuit, he and the other Plaintiffs are seeking damages in the amount of 2.5 hours of overtime payment during weeks in which they received other premium payments in accordance with the various provisions of the CBA, even where those premium payments encompassed as many as eight to ten hours in that week and when the premium payments were paid at double-time rates. Exhibit E, (Hamel Depo. Trans.) at 113:2-6 (making a premium pay claim for every unpaid lunch break during responsive period); 126:18-133:17 (discussing the numerous ways that the Plaintiffs regularly received premium pay); 135:9-22 (confirming that he expects one-and-a-half and double pay requirements under the CBA to apply to these damages calculations).

24.     Because the Plaintiffs would plainly seek double-time rates for, e.g., "on-call" pay, "called out" pay, Sunday pay, and holiday pay as provided for in the various provisions of their CBA, *see id.*, a court could not simply reference the CBA to determine the applicable wage rate for these specific payments and their various contractual provisions. Instead, these sought-after

damages would require extensive analysis and interpretation of the CBA in order to calculate. *See, e.g., Cavallaro*, *supra; Adames v. Executive Airlines, Inc.*, 258 F.3d 7 (1st Cir. 2001) (finding LMRA preemption where "it would be impossible to assess the remedy, payment at twice the hourly rate [under Puerto Rico law], without 'interpreting the [CBA] to establish what the applicable 'regular' rate would be.'").

25.    Because Kenney and Plaintiff Hamel's deposition testimony revealed that their claims are dependent upon CBA analysis and interpretation, this case has now become removable on the basis of federal question jurisdiction. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-7 (2003) (citing *Avco Corp. v. Machinists,* 390 U.S. 557 (1968)(where "petitioner's action 'arose under' § 301," it "could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law . . . and had sought a remedy available ***only*** under state law" because "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'")); *see also Foy v. Pratt Whitney Group,* 127 F.3d 229, 232 (2d Cir. 1997) ("any claim based on preempted state law is considered a federal claim arising under federal law").

26.    Because Plaintiffs' claims are preempted under the LMRA, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## <u>Notice to State Court and Adverse Party</u>

27.    Pursuant to 28 U.S.C. § 1446(d), promptly after filing of this Notice, a notice of this removal, together with a copy of this Notice, will be filed with the Clerk of the Superior Court of the Commonwealth of Massachusetts, Hampden County, and will also be served on opposing counsel.

WHEREFORE, NSTAR hereby removes this case from the Superior Court of the Commonwealth of Massachusetts, Hampden County, to the United States District Court for the District of Massachusetts and respectfully asks that this action proceed in this Court.

***

Dated: July 21, 2022

Respectfully submitted,

**NSTAR ELECTRIC COMPANY (d/b/a EVERSOURCE ENERGY),**

By its attorneys,

By:   */s/ Christopher M. Pardo*
Christopher M. Pardo (BBO# 674674)
 *cpardo@HuntonAK.com*
Elizabeth L. Sherwood (BBO# 687866)
 *esherwood@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Tel: (617) 648-2800
Fax: (617) 433-5022

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher M. Pardo, hereby certify that on July 21, 2022, I served a copy of the foregoing document via electronic mail on the following counsel of record:

Paul F. Kelly, Esq.
  *pkelly@segalroitman.com*
James A. Shaw, Esq.
  *jshaw@segalroitman.com*
Jocelyn B. Jones, Esq.
  *jjones@segalroitman.com*
Ryan M. Quinn, Esq.
  *rquinn@segalroitman.com*
SEGAL ROITMAN, LLP
33 Harrison Ave., Seventh Floor
Boston, MA 02111

*/s/ Christopher M. Pardo*
 Christopher M. Pardo